### APPEAL OF ACME BOX & LUMBER CO.

Docket No. 4472.   Submitted December 2, 1925.   Decided February 13, 1926.

> A contract to buy stock does not in itself vest a control thereof in the purchaser.

*Henry J. Richardson, Esq.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

#### FINDINGS OF FACT.

The Acme Box & Lumber Co. is an Ohio corporation, having its principal place of business at Cleveland. During 1919 it had outstanding capital stock in the amount of $60,000, having a par value of $100 per share. On September 17, 1919, the owners of all the outstanding stock gave an option for the purchase thereof to one Edward O. Young. The option was to be exercised on or before November 15, 1919. This option was, for a valuable consideration,

assigned and transferred to the National Folding Box Association, a Delaware corporation, on October 16, 1919. The National Folding Box Association, for a valuable consideration, assigned the same to the Folding Box Co. on October 20, 1919. This option was extended to December 15, 1919, again to March 15, 1920, and again to July 15, 1920, all of which extensions were endorsed on the option.

The price per share for the said stock, as set out in the option, was $375, and was payable as follows: One-half of the $375 per share was agreed to be paid on or before November 15, 1919, upon the transfer and delivery to the Broadway Savings & Trust Co. of Cleveland in escrow of certificates evidencing 40 per cent of the capital stock of the company, said certificates to be assigned in blank but to have no voting power. The remaining 60 per cent of the stock was to be delivered to the Broadway Savings & Trust Co. upon payment of the remaining one-half of the amount stated, which amount was to draw interest at the rate of 6 per cent from November 15, 1919, at which time the original option provided that all of the stock duly assigned should be delivered to the person or persons exercising the option, or their nominees, and further provided that the remaining one-half should be paid on or before February 15, 1920, and, in default of such payment of said certificates of stock, 600 shares should revert to and become the property of the vendors, and the amount of the first payment should be regarded as liquidated damages.

The option also provided that all of the stock must be purchased or none of it.

Payments were made from time to time until July 15, 1920. The first payment made under the option was made on November 15, 1919, in the amount of $1,000. Another payment was made on January 7, 1920, in the amount of $5,000; another payment was made on January 14, 1920, in the amount of $14,000; another payment was made on January 22, 1920, in the amount of $10,000; and another payment was made on February 10, 1920, in the amount of $10,000, making a total of $40,000 received in cash up to February 10, 1920.

The stockholders of the Acme Box & Lumber Co. received $75,000 in stock of the Folding Box Co. as part payment in lieu of cash. It was agreed in the latter part of 1919 that this could be done, and the stock was issued to them in February, 1920. The balance of principal and interest was paid to them by a note for $120,000 on July 15, 1920, and the amount of $465 was paid in cash, making a

total consideration, including the amount of stock received in the Folding Box Co., the note received and cash, of $235,465.

The payments were not made according to the terms of the option, and there is no evidence that the terms of the option with respect to the deposit of the stock in escrow were carried out. The stock of the Acme Box & Lumber Co. was not acquired by the Folding Box Co. until July, 1920. Prior to that time it did not own or control substantially all of the stock of the Acme Box & Lumber Co.

DECISION.

The determination of the Commissioner is approved.

OPINION.

TRAMMELL : The question as to whether the Folding Box Co. owned or controlled substantially all the stock of the Acme Box & Lumber Co. is one of fact. It did not own any of the stock prior to the date it acquired that referred to in the option. An examination of the option agreement does not disclose any provision which could be interpreted as vesting a control of the stock in the purchasers unless or until the stock was actually acquired. A witness on the stand was asked if the owners of the stock followed the provisions of the contract as to the delivery of the stock. He answered, "I guess we did." But the option contract provided that only 40 per cent of the stock would be deposited in escrow when 50 per cent of the purchase price had been paid and the remaining 60 per cent was to be delivered when final settlement was made. There is no positive evidence that the provisions of the option as to deposit of the stock in escrow were carried out, and even if it were so deposited that amount was only 40 per cent. There is nothing of record to indicate that the purchasers would have had any control over the stock even if it had been deposited in escrow. While the first payment under the option was made in November, 1919, the contract appears to have been executory and had not been executed. The sellers did not sell their stock but retained it until the final settlement was made. The option gave the purchasers merely the right to buy the stock. The acceptance of the payments by the sellers bound them to convey according to the option, but a contract to buy which is binding on the seller to sell does not itself give the buyer a control of the stock. The taxpayer could not have voted it, nor could it have directed or influenced the voting of that stock. Nor did the taxpayer even claim that it could have done so. Until the contract had been executed and the stock bought, the control remained in the owner.